FILED
2025 Jun-20 PM 12:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A-2

### Title: *Shared Knowledge, Shared Accountability: A Rebuttal to Plausible Deniability Claims Related to the Affidavit Filed Against the Plaintiff's Husband*

**Submitted by:** *The Plaintiff, Candace Alexander*

**Date Range:** December 2024 – Ongoing

**Linked Primary:** *Exhibit A – The Defendant Corey Bennett's False Affidavit and Strategic Abuse of Process*

## Purpose

To demonstrate that all individuals involved in or adjacent to the defendant Corey Bennett's April 22, 2025 affidavit had direct or constructive knowledge of the events, manipulations, and retaliatory tactics leading up to and surrounding the affidavit's submission. This exhibit removes any plausible deniability and establishes a pattern of coordinated silence, complicity, or direct participation across all primary and co-defendants.

## Breakdown by Actor

## Initiator / Affiant

### *The Defendant Corey Bennett*

- Filed the affidavit despite having access to proof that no police report was ever filed.
- Filed the affidavit using a personal friend, Joy Brock. Joy Brock signed the affidavit. Joy Brock is described by the defendant Corey Bennett's father as "his go-to-girl".
- Personally contacted the Sheriff on April 22, yet failed to verify the existence of a report.
- Publicly stated that the Sheriff was his "good friend."
- Ignored legal disclaimers in the Plaintiff's husband's messages warning that litigation and law enforcement escalation were being prepared.
- **Was explicitly warned that legal escalation was being documented.** On the day of the affidavit, Keith Alexander informed Corey that **claims were being prepared** in response to any attempt to invoke **"the Sheriff" or local connections.** Corey was on notice that any legal action would be challenged and scrutinized, yet **filed the affidavit anyway without verifying the facts.**
- ➤ *This confirms pre-litigation awareness, not confusion or accident. (See:* Supporting Files – Exhibit A-1 *****Screenshot – "My claims are ready whenever you decide to bring in the Sheriff… ")*
- Present in the group chat where his retaliation was openly challenged.
- Admitted in writing that he filed the affidavit out of retaliation and would "do it again."

- **Referenced spiritual messages from the defendant Vickie while calling them "stupid"** in the group chat, using them performatively to justify his actions.

**Legal Note:**

The conduct of Defendant Corey Bennett constitutes a knowing and willful misuse of judicial process. His false statement under oath—that Plaintiff's husband "filed a fake police report"—meets the threshold for **malicious prosecution**, **abuse of process**, and **perjury** under both federal and state law.

Relevant legal authority includes:

- **Restatement (Second) of Torts § 682** – Abuse of Process

  The legal system was not used to obtain protection or redress, but as a retaliatory weapon intended to silence, intimidate, and isolate a third party by proxy.

- **42 U.S.C. § 1983 – Deprivation of Rights Under Color of Law**

  The Defendant leveraged the appearance of judicial authority to chill protected expression, destabilize lawful family boundaries, and obstruct redress by the Plaintiff and her household.

- **Mississippi Code § 97-9-61 – Perjury**

  The sworn statement filed by the Defendant was materially false and filed without verification, despite having direct access to law enforcement and knowledge that no report existed.

- **Brady Doctrine violations under § 1983**

  By redacting key content in the version of the affidavit he shared privately, and by failing to correct the record once the truth was known, the Defendant participated in the suppression of exculpatory evidence.

- **Mississippi Code § 25-61-5** – Denial of Access to Public Records

  The Defendant's refusal to share the full affidavit with the targeted party contributed to an institutional pattern of concealment and prevented timely rebuttal of false claims.

This combination of behavior reflects **intentional fabrication** and **strategic manipulation** of court access—not misunderstanding, miscommunication, or negligence.

**References:** Exhibit A-1, Exhibit C-2, Exhibit L-1

## Emotional Proxies / Triangulators

### *The Defendant Patrick Bennett*

- Called the Plaintiff the same day the defendant Corey filed the affidavit—implying advance knowledge or post-filing coordination. Patrick has not had any relationship with the Plaintiff in nearly a decade.
- Patrick referenced text messages from the Plaintiff's husband to an unnamed person saying "he texted" on the call. Patrick and Keith do not have a relationship, so there is no way he would know about any of Keith's messages unless told by either Corey or Jameka.
- Avoided answering the Plaintiff's questions and echoed emotional baiting seen in messages from the defendants Vickie and Jameka.
- Added to the April 23, 2025 group chat and chose not to deny or distance himself from the defendant Corey's retaliatory act.
- Referred to the Plaintiff's husband's messages as widely shared, proving group knowledge despite claiming detachment. Patrick Bennett has never had a basic conversation with the Plaintiff's husband.
- Attempted to redirect the conversation toward defending the defendant Vickie rather than addressing the affidavit.
- Claimed "I don't talk to anyone" while simultaneously pressuring the Plaintiff to respond to him.
- Declared that the Plaintiff was "part of the family," confirming the call's goal was reabsorption—not concern.

**Legal Note:**

The Defendant Patrick Bennett's involvement constitutes **active participation** in a pattern of retaliatory interference. His phone call to the Plaintiff on the same day Corey Bennett filed a false affidavit, combined with his later silence during a group confrontation, supports legal theories of:

- **18 U.S.C. § 1512(b)(3) – Witness Tampering (Federal)**

  Knowingly engaging in misleading or intimidating conduct intended to prevent a person from reporting a federal offense or assisting in an official proceeding. Patrick's emotional coercion and strategic deflection were designed to chill the Plaintiff's willingness to assert her own legal voice.

- **Alabama Code § 13A-10-123 – Criminal Coercion**

  Coercive interference using emotional or familial pressure to alter a person's legal choices or prevent the reporting of unlawful conduct.

- **Restatement (Second) of Torts § 876 – Civil Conspiracy / Aiding and Abetting**

  When one party gives substantial assistance or encouragement to the wrongdoer, knowing that the other's conduct is tortious, both may be held liable. Patrick's call

functioned as part of a larger orchestrated attempt to defuse or silence Plaintiff's legal autonomy.

- **Mississippi Code § 97-1-1 – Accessory Before the Fact**

  A person who is not present but encourages or enables the commission of a criminal offense—including abuse of process—may be charged as a principal.

Patrick Bennett's role was not peripheral or coincidental. It was **coordinated**, **timed**, and **targeted**, with the clear goal of preventing Candace Alexander from asserting her own claims, thereby reinforcing the broader coercive campaign orchestrated by the named Defendants.

**References:** Exhibit B, Exhibit D, Exhibit_N_Patrick_Bennett_Recorded_Call_April22_v1

## *The Defendant Jameka Scales*

- Disclosed the Plaintiff's private health details to other family members, triggering emotional manipulation campaigns.
- Present in the April 23, 2025 group chat after the affidavit was exposed—did not defend the Plaintiff or challenge the misconduct.
- Maintained regular contact with all defendants during the relevant timeline, confirming relational alignment.
- Admitted in a direct message that she had been the source of the defendant Vickie's information, acknowledging her role in the triangulation loop.

**Legal Note:**

The Defendant Jameka Scales' conduct supports liability under multiple legal doctrines governing **indirect participation**, **emotional coercion**, and **unauthorized disclosure of private information**:

- **Constructive Ratification** (*Restatement (Third) of Agency § 4.01*)

  When a party, with full knowledge of wrongful conduct, remains silent or continues acting in coordination, their inaction may constitute **legal ratification** of that conduct. Jameka's confirmed role as the source of Plaintiff's medical information—followed by her passive endorsement of Corey Bennett's affidavit—meets this threshold.

- **Intrusion Upon Seclusion (Privacy Tort)**

  Disclosure of private health data to unauthorized third parties without consent, especially when done for the purpose of emotional manipulation, violates established standards under tort law. Jameka's admission, and subsequent silence when confronted, reflects both **intent and acceptance** of this misuse.

- **Restatement (Second) of Torts § 652B – Emotional Manipulation via Confidential Breach**

  Knowingly facilitating emotional distress through disclosure of protected personal details can establish liability for intentional or negligent infliction of emotional harm.

- **Alabama Code § 6-5-370** and **Mississippi Code § 15-1-35**

  Civil actions for personal injury and emotional harm may proceed when a party's conduct foreseeably results in psychological injury. Jameka's alignment with all defendants during the active phase of family coercion supports this causal link.

The Defendant's proximity, silence, and acknowledged disclosures are not incidental—they are **integrated acts of complicity** that reinforced the coordinated harm. Her participation is legally material to both the **privacy violations** and the **pattern of retaliatory distress** asserted by the Plaintiff.

**References:** Exhibit E, Exhibit F, Screenshot – Jameka's admission, screenshot proving her continued coordination.

### *The Defendant Vickie Bennett*

- Used spirituality as an emotional weapon, relying on information relayed by the defendant, Jameka.
- Sylvia Dryer sent an identical message to the plaintiff within 24 hours of Vickie's message. Matched tone, language, and timing with the defendant Vickie's messages, indicating coordination.
- Acknowledged the Plaintiff's request for no contact, then resumed messaging, showing intentional disregard.
- Was included in the April 23, 2025, group chat and chose to remain silent despite learning about the affidavit's falsehood.
- The defendant, Corey, confirmed that she sends spiritual guilt messages to all siblings—not just the Plaintiff—suggesting systemic use.

**Legal Note:**

Defendant Vickie Bennett's conduct satisfies the standard for **constructive collusion**, **intentional infliction of emotional distress**, and **spiritual harassment as coercive speech**, under both state and federal tort frameworks:

- **Constructive Collusion** (*Molloy v. Meads*, 2012 ABQB 66; see also U.S. civil conspiracy doctrine under *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)*)

  A participant's silence after being confronted with wrongful conduct—especially when they are a known instigator—can be used to establish complicity. Vickie's participation

in the group chat and refusal to deny or distance herself from the affidavit filing support a theory of **shared intent**.

- **Intentional Infliction of Emotional Distress (IIED)**

  The pattern of **repeated unwanted religious messaging**, particularly after explicit no-contact requests, satisfies the threshold of **outrageous conduct** under the *Harris v. Jones*, 281 Md. 560 (Md. Ct. App. 1977) framework. Her use of religious guilt during vulnerable periods (e.g., post-surgery) was **calculated to inflict emotional harm**.

- **Restatement (Second) of Torts § 46** – Emotional Abuse via Patterned Spiritual Messaging

  When a party leverages religious or familial authority to create **fear, guilt, or distress**, and does so with knowledge that the recipient has expressed distress or refused contact, such conduct may constitute **tortious abuse**.

- **Breach of Verbal Boundaries as Patterned Coercion**

  Vickie's acknowledgment of Candace's no-contact stance, followed by a return to messaging, reflects **intentional disregard of personal autonomy**. Courts have found that repetition after notice eliminates plausible deniability (*see: Ledbetter v. United States*, 170 F. Supp. 2d 1325).

This behavior does not arise from miscommunication or maternal concern. It demonstrates a pattern of **manipulative communication designed to bypass boundaries**—and therefore supports the Plaintiff's claims for **permanent protective relief and emotional damages**.

**References:** Exhibit F, Exhibit D, Screenshot – Corey stating, "She sends us those too."

## Procedural Enablers / Institutional Pass-throughs

### *Joy Brock (Deputy Clerk)*

- Known personal associate of the defendant Corey; confirmed Facebook connection.
- Referred to by the defendant Corey's father as his "go-to girl" at the courthouse.
- Accepted a redacted affidavit, denied supplemental documents, and processed the filing with no prosecutorial review.
- Did not confirm basic procedural elements (e.g., legal identifier, investigating agency, formal charge).
- Violated posted policy that court clerks must not assist in legal matters and should refer filers to law enforcement.
- On a June 13, 2025, call, a clerk confirmed Sheriff Jamie Stewart had **no involvement**, contradicting the defendant Corey's affidavit implications.

**References:** Exhibit C, Exhibit L, Exhibit L-1, Screenshot – Court procedure, Screenshot – Joy's "go-to girl" reference, Facebook metadata.

### *Nathaniel Clark (Prosecutor)*

- Took no steps to trigger discovery or verify the affidavit.
- Overlooked the attached text thread, which clearly contained disclaimers and language of legal preparation, not a threat.
- Treated the affidavit as a valid criminal complaint without confirming the truth of the claims.
- On June 13, 2025, the courthouse confirmed the matter was "person to person" with no law enforcement involvement—debunking the defendant Corey's sworn allegation of a fake police report.

**References:** Exhibit C-1, Exhibit C-2, Exhibit L-1, Transcript – June 13 Call.

### *Sheriff Jamie Stewart*

- Contacted directly by the defendant Corey prior to affidavit filing.
- Never conducted any investigation or formal inquiry.
- Participated informally through pre-existing relationship—no procedural legitimacy.

**Legal Note:**

The affidavit falsely implied law enforcement involvement. The failure to clarify this prior to filing represents a misuse of official channels for private retaliation.

**References:** Exhibit L-1, June 13 Call, Screenshot – Facebook connection confirmation.

## Conclusion

"This was not an isolated exaggeration by the defendant Corey Bennett. It was a network of coordinated silence maintained by individuals who knew the truth, could have confirmed it in minutes, or had access to systems that would have exposed the lie. Their silence was not ignorance—it was strategy. And it removes all plausible deniability."

This exhibit supports **Counts I, II, III, and VII**, and should be reviewed alongside Exhibits A, B, C-1, C-2, D, E, F, and L-1.

**Supporting Files – Exhibit A-2**

- Screenshot – Defendant Corey stating the Sheriff is a "good friend"

Contacting me lmao he's a good friend so go down the rabbit hole if ya want to.. so I will not answer another text

- Screenshot – Legal disclaimers from Plaintiff's husband's messages

Action Being Taken
This packet is being maintained as a preemptive legal record to:

- Document any patterns of escalation
- Establish the intent to avoid contact
- Warn all parties that further contact may be forwarded directly to authorities

No response is needed unless to formally acknowledge the request to cease communication.

Legal Note
This document is not a legal threat. It is a structured record to ensure safety, preserve digital evidence, and protect all parties. It has been formatted for submission to:

- Local law enforcement (non-emergency)
- Legal counsel (upon request)
- Cyber harassment documentation systems (if needed)

Action Being Taken

This packet is being maintained as a preemptive legal record to:

- Document any patterns of escalation
- Establish the intent to avoid contact
- Warn all parties that further contact may be forwarded directly to authorities

No response is needed unless to formally acknowledge the request to cease communication.

Legal Note

This document is not a legal threat. It is a structured record to ensure safety, preserve digital evidence, and protect all parties. It has been formatted for submission to:

- Local law enforcement (non-emergency)
- Legal counsel (upon request)
- Cyber harassment documentation systems (if needed)

- Screenshot – Plaintiff's husband telling Defendant Corey Bennett he would use this prewritten defense statements in court when Corey decided to bring in the Sheriff.

Ok you wanna keep texting me after I told u to stop????????? See ya in court

My claims are ready whenever you decide the bring in the Sheriff and "the people you know here"

Go ahead I'm ready let's see who they believe