FILED
2025 Sep-02 AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

CANDACE ALEXANDER,
Plaintiff,

v.

JAMEKA SCALES, *et al.*,
Defendants.

Case No. 1:25-cv-980-CLM

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

All four Defendants submitted substantially identical motions and affidavits, relying on the same core arguments and rhetorical framing. Their filings are addressed collectively in this response, consistent with the procedural overlap and the coordinated conduct alleged in the Complaint.

## COLLECTIVE RESPONSE TO IDENTICAL MOTIONS TO DISMISS (DOCS 26-29)

**1. "To dismiss the action because the complaint fails to state a claim…"**

**RESPONSE:** The Plaintiff's Complaint satisfies the pleading standards under Rule 8(a) of the Federal Rules of Civil Procedure. Specifically, it includes:

- **A short and plain statement of jurisdiction**, citing 28 U.S.C. § 1331 (federal question jurisdiction under 42 U.S.C. § 1983) and 28 U.S.C. § 1367 (supplemental jurisdiction over related state law claims). The Complaint identifies violations of the Plaintiff's federal rights by individuals acting under color of law and in coordination with public officials (Doc 1 Exhibit A-1, page 18 and Exhibit C).

- **A short and plain statement showing entitlement to relief**, structured around a detailed six-phase timeline and supported by exhibits (Doc 1 A–Q and Doc 11 R). The Complaint connects specific acts by each Defendant, including false filings, triangulated contact, and coordinated threats, to concrete forms of harm suffered by the Plaintiff. The claims are not speculative, emotional, or vague; they are documented, dated, and corroborated.

- **A clear demand for relief**, outlining a limited and judicially manageable request: declaratory and injunctive relief to formally sever ongoing entanglement with the Defendants and prevent future interference.

The Defendants, in contrast, have not challenged a single count, timeline, or exhibit. Their motion does not state which claim fails, what element is missing, or why the Complaint is insufficient. Instead, they broadly declare

that the lawsuit "fails to state a claim" while ignoring the actual content of the Complaint.

If the Complaint truly lacked substance, the Defendants could have identified the weakest count and presented a targeted objection. They did not. This blanket dismissal request reads more like a delay tactic than a good-faith legal challenge. Under Rule 12(b)(6), that is not enough.

**REFERENCE:** Federal Rules of Civil Procedure (December 2024)

**2. "To dismiss the action on the grounds that the court lacks jurisdiction because the amount… is less than ten thousand dollars…"**

**RESPONSE:** This objection misstates federal law. Under **28 U.S.C. § 1331**, federal courts have jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, with no monetary threshold required. Jurisdiction of federal questions under this section is not dependent upon the amount in controversy. Plaintiff's complaint, brought under **42 U.S.C. § 1983**, asserts violations of her constitutional rights by individuals acting under color of state law. This Court's jurisdiction is therefore proper. **This Court, the U.S. District Court for the Northern District of Alabama, is a federal court with proper subject matter**

**jurisdiction under § 1331.** The defendants cite no law, case, or statute to support their claim.

**REFERENCES:**

    a) Federal Rules of Civil Procedure (December 2024)

    b) https://uscode.house.gov/view.xhtml?req=granuleid:USC-1994-title28-section1331&num=0&edition=1994 (paragraph 3 1st sentence, Amendment 1980-Pub. L. 96-486, struck out "; amount in controversy; costs)

### 3. "Attached hereto… is my Affidavit as Exhibit 'A'."

**RESPONSE:** This bullet point does not present a legal argument or factual rebuttal. In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court held that conclusory statements, unsupported by factual allegations, are not sufficient. Legal conclusions may provide context, but they must be supported by factual substance. Here, the Defendants' affidavits, attached or otherwise, offer only personal denials and vague commentary without engaging the actual claims, timeline, or attached exhibits.

    Each Defendant ignores the record. They do not address the group chat coordination (Doc 1 Exhibit D), the medical surveillance (Doc 1

Exhibit E), or the triangulated contact pattern supported by audio and screenshots (Doc 1 Exhibits A–C, F–G, N). They submit synchronized affidavits that contradict their prior claims in Doc 8, where they told the Court they needed time to obtain legal counsel and acknowledged that direct contact with the Plaintiffs would be inappropriate given the allegations. Their current statements disavow those concerns entirely, with no explanation.

Instead, they rely on rhetorical misdirection and collective silence, which mirrors the behavior alleged in the Complaint, confirming that the coordinated pressure, conspiracy, and abuse of process remain ongoing.

The Defendants' affidavits are not defenses. They are synchronized deflections. Under *Iqbal*, such filings are insufficient. The Plaintiff, by contrast, has submitted detailed, fact-based claims supported by exhibits and corroborating evidence. Her claims meet the federal pleading standard. Their collective denials do not.

**REFERENCE:** *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

https://supreme.justia.com/cases/federal/us/556/662/

**4. "Plaintiff sued me for actions between her husband and Corey. She does not have standing."**

**RESPONSE:** This is incorrect. Plaintiff Candace Alexander's standing is well-established under Supreme Court precedent and clearly articulated in the Complaint.

In *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004), the Court held that a plaintiff has standing when they suffer a concrete injury, traceable to the defendant's conduct, and likely to be redressed by a favorable decision.

Here, Candace alleges direct personal harm, reputational, emotional, and procedural, stemming from the Defendants' coordinated behavior. She is not asserting injury on behalf of her husband. The Complaint outlines how the Defendants targeted Candace specifically through indirect communication, group coordination, and court-involved filings designed to harass or control her.

These injuries are well documented and form the basis of her claims for declaratory and injunctive relief. Because the harm is personal, ongoing, and redressable by the Court, the standing requirement is fully met.

**REFERENCE:** *Kowalski v. Tesmer*, 543 U.S. 125 (2004)

https://supreme.justia.com/cases/federal/us/543/125/

**5. "There is no cause of action for the rantings in the Petition."**

**RESPONSE:** This is a vague and unsupported assertion. The Complaint alleges specific counts, including civil conspiracy, intentional infliction of emotional distress (IIED), and abuse of process, and ties them to documented behavior by each Defendant, supported by Doc 1 Exhibits A–F, H, J, and particularly A-1. The Defendants offer no legal basis or factual rebuttal.

While not binding in this Circuit, *Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994), remains instructive. The Second Circuit held that abuse of process under § 1983 applies where a defendant (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. As shown in Doc 1 **Exhibit A-1**, Corey Bennett satisfies all three elements:

- **(1)** He used the affidavit process to compel behavior, not to report a crime. In his own written statements, Corey confirms he filed on behalf of the Plaintiff and admits he did so to stop *the Plaintiff's*

*husband from manipulating her* (Exhibit A-1, page 1), not to seek protection.

- **(2)** He stated, both in the affidavit and follow-up group chat (Doc 1 Exhibit A-1, page 1), that he would do it again, while using emotional threats and misdirection. His conduct lacked any legal necessity or justification.

- **(3)** He warned Candace not to contact him again or she would receive the *same paperwork,* (Doc 1 Exhibit A-1, page 16), confirming the filing was used to exert reputational pressure and retaliate.

Notably, **he was called to testify** in the criminal matter his affidavit triggered but ghosted the court appearance, offering no explanation (Doc 1 Exhibit O, page 9). His absence ensured that no testimony could clarify what occurred. This behavior reflects a pattern of invoking judicial process to create conflict while avoiding scrutiny, the very abuse of process *Cook* describes.

These facts are not speculative. They are documented and analyzed in Doc 1 **Exhibit A-1 and O**, which outlines the weaponization of a state legal instrument to pursue private emotional leverage. That is not the purpose of process. It is the definition of abuse.

**REFERENCE:** *Cook v Sheldon* (1994)

https://law.justia.com/cases/federal/appellate-courts/F3/41/73/563917/

**6. "This is a fraudulent case."**

**RESPONSE:** The Defendants' current claim that this is a "fraudulent case" is not only unsupported by evidence but also directly contradicted by their own prior statements to the Court. In their jointly signed Motion for Extension of Time (Doc 8), they explicitly stated that the matter was serious enough to warrant "retaining legal counsel and assessing the legal sufficiency of the claims." They further acknowledged that "it would be inappropriate to contact Plaintiffs directly given the nature of the allegations", signaling both procedural awareness and the need to engage with the process through appropriate legal channels.

This reversal, from claiming a need for legal assistance and ethical restraint to now labeling the case as "fraudulent", demonstrates not just inconsistency but intentional misuse of the court's process. Under the abuse of process doctrine, this conduct satisfies all three elements:

1. **Use of regularly issued process:** The Defendants formally engaged the Court by filing joint motions and invoking judicial review.

2. **Intent to do harm without justification:** They now repurpose that process to smear the Plaintiff, despite having already acknowledged the seriousness of her claims.

3. **Collateral objective:** Rather than engage with the facts, they seek to delegitimize the Plaintiff entirely, shifting the Court's focus away from their own conduct.

This pattern mirrors the malicious abuse of criminal process recognized in *Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994), where the Second Circuit held that abuse of process occurs when legal tools are used not to resolve legitimate disputes but to intimidate, retaliate, or pursue unrelated objectives.

Like in *Cook*, the Defendants here are not defending themselves, they are using court procedures as a tool of personal retribution, shifting narrative while avoiding substance. Their misuse of the judicial process underscores the very harm that §1983 was designed to remedy and confirms the Plaintiff's abuse of process claim.

**REFERENCE:** *Cook v Sheldon* (1994)

https://law.justia.com/cases/federal/appellate-courts/F3/41/73/563917/

7. **"I filed a criminal charge against Keith Alexander. The case is not finished... I did not file a charge against this Plaintiff."**

**RESPONSE:** The Defendants have not provided a case number, docket entry, or official citation to support the existence of an ongoing case. The burden of establishing the legal relevance or existence of such a case lies with the party asserting it.

Under **Rule 1.4(c)–(d)** of the **Mississippi Rules of Criminal Procedure**, what Corey Bennett filed was a **charging affidavit**, not a criminal charge. A charging affidavit is a **preliminary statement**, not a formal charge. Only a **prosecuting attorney** may initiate criminal proceedings under Mississippi law. **Rule 1.4(h)** defines a *Prosecuting Attorney* as a municipal or county attorney, district attorney, or other **formally appointed person** acting under statutory or judicial authority. Corey Bennett is **not an attorney, not appointed**, and holds **no legal authority** to file or prosecute criminal charges. His repeated claim that he "filed a charge" is a **misrepresentation of Mississippi criminal procedure**.

**REFERENCE:** Mississippi Rules of Criminal Procedure

**8. "I fear for my sister's mental health. It looks like an artificial intelligence pleading."**

**RESPONSE:** This is an unqualified and inappropriate mental health assertion. None of the Defendants are licensed clinicians, nor do they have a current relationship with the Plaintiff. They are in no position to evaluate her psychological state, and their comments are speculative and derogatory, not legal defenses. As confirmed in Doc 45, the Court permits the use of generative AI tools, making any objection on that basis both baseless and irrelevant.

The Defendants repeatedly invoke biological labels to recast this lawsuit as a family dispute. They are distant individuals with minimal contact who abruptly re-entered the Plaintiff's life through coordinated messages, threats, and legal filings. This is not a case of domestic tension but of targeted interference by near-strangers. When stripped of the "sister" label, the Defendants' conduct appears as reputational obsession and procedural harassment.

This pattern is evident even in the affidavit that launched the underlying events. In Doc 1 Exhibit A-1, page 11, Corey Bennett refers to the Plaintiff as his sister but provides no factual basis or criminal allegation,

only emotional claims. Like the later filings, the affidavit reflects vague language and misused labels to deflect scrutiny. These tactics reinforce the Plaintiff's request for injunctive and declaratory relief.

It is particularly disingenuous for Patrick Bennett to raise mental health concerns while simultaneously expressing open contempt for the profession. See Doc 1 Exhibits J, page 2 and N (Patrick's recorded call).

**REFERENCE:** Mississippi Rule of Criminal Procedures

## CONCLUSION

None of the Defendants' filings provide a valid legal or factual basis for dismissal. Their motions are procedurally deficient, unsupported by evidence, and fail under Rules 12(b)(1) and 12(b)(6). The Plaintiff respectfully requests that the Court deny all motions to dismiss and allow the case to proceed.

This litigation reenacts the very group dynamics alleged in the Complaint. In *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), the court held that civil conspiracy may be inferred from coordinated conduct, even absent direct admissions, where three elements are present: (1)

agreement, (2) overt act, and (3) resulting harm. All three are supported here:

- **Agreement** – The Defendants filed a joint extension request (Doc 8), submitted matching affidavits (Docs 26–29) and maintained synchronized silence during both the April 23 group chat (Doc 1 Exhibit D) and this case. Their filings follow a shared narrative, mirroring Corey Bennett's framing.
- **Overt Act** – Corey filed an affidavit that led to a criminal summons rooted in personal grievance, not public interest (Doc 1 Exhibits A, A-1). All Defendants then repeated defamatory mental health claims (Docs 26–29), weaponized religious language during a medical crisis (Doc 1 Exhibit E), and used triangulation and reputational manipulation (Doc 1 Exhibits B, E, F).
- **Resulting Harm** – Candace Alexander suffered reputational damage, emotional destabilization, and procedural exclusion from a legal process that impacted her directly. These harms are personal, documented, and ongoing (Doc 1 Exhibits C, J, O, Docs 26–29).

Their filings validate the very patterns alleged in the Complaint: emotional pressure, procedural misuse, and synchronized retaliation. This

satisfies the *Halberstam* test and supports Plaintiff's §1983 conspiracy and abuse of process claims.

**REFERENCE:** *Halberstam v. Welch (1983)*

https://law.justia.com/cases/federal/appellate-courts/F2/705/472/250679/

Additionally, the procedural exclusion suffered by the Plaintiff gives rise to nominal and declaratory relief even in the absence of quantifiable injury. As established in *Carey v. Piphus*, 435 U.S. 247 (1978), a denial of procedural due process is actionable under §1983 and warrants at least nominal damages, because the right to fair process is "absolute" and its violation is legally cognizable regardless of outcome. The Plaintiff's exclusion from meaningful participation, while Defendants invoked her name to carry out personal retaliation, falls squarely within this principle.

**REFERENCE:** *Carey v Piphus (1978)*

https://supreme.justia.com/cases/federal/us/435/247/

The claim that Plaintiff "lacks standing" to request a lifetime no-contact injunction is especially disturbing. It implies the Defendants believe they retain a right to future contact with her simply because they are "family," despite her repeated statements that she is not part of their family structure.

This position does not refute her claims; it confirms the very boundary violations at issue.

The Plaintiff is not seeking monetary damages or prolonged litigation. She seeks only a clear and enforceable no-contact injunction to end a pattern of coordinated interference. Whether the Court grants this relief for life or for a period it deems appropriate, the goal is stability and final separation.

The Defendants' coordinated legal filings do not refute the Plaintiff's claims; they confirm them. By jointly requesting more time under the pretense of seeking legal counsel, the Defendants misled the Court and exploited the delay to continue coordinated contact, including crafting defamatory mental health claims against the Plaintiff as part of a broader effort to destabilize her and discredit her allegations.

Their failure to secure counsel, combined with repeated procedural missteps and no meaningful legal defense, and their ongoing refusal to provide proof for any of their claims, illustrates exactly the pattern of manipulation and interference this lawsuit was brought to stop.

The Plaintiff respectfully asks the Court to issue final judgment against the defendants based on the current record and grant the injunctive relief needed to ensure she is left alone.

**CANDACE ALEXANDER**
PRO SE PLAINTIFF
7415 NATURE WALK WAY, SE
OWENS X ROADS, AL 35763